Filed 8/17/22  In re K.Z. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re K.Z., a Person Coming Under the Juvenile Court Law. | |
| | D079358 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J242875) |
| v. | |
| K.Z., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Kathleen M. Lewis, Judge.  Conditionally reversed and remanded with directions.

Deanna L. Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Warren J. Williams and Juliet W. Park, Deputy Attorneys General, for Plaintiff and Respondent.

At age 14, K.Z. (the Minor) was charged by petition with one felony count of committing a lewd act on a child under 14. (Pen. Code, § 288, subd. (a).) Before the adjudication hearing, the Minor moved to be placed on informal supervision, which, if successfully completed, would have resulted in dismissal of the charge against him. (See Welf. & Inst. Code, § 654.2.)[1] Under the version of section 654.3 then in effect, the Minor was presumptively ineligible for informal supervision because he was "alleged to have committed a felony offense when [he] was at least 14 years of age." (Former § 654.3, subd. (h).) The court denied the motion. Later, the court sustained the petition, adjudged the Minor a ward of the court, and placed him on probation in the custody of his father.

On appeal, the Minor challenges the denial of his motion for informal supervision on the basis the Legislature subsequently amended section 654.3 to (among other things) delete the subdivision that had rendered him presumptively ineligible, thus rendering him now presumptively eligible. (Stats. 2021, ch. 603, § 1.) The Minor contends amended section 654.3 applies retroactively to his case and requires a remand for reconsideration in light of the newly reversed presumptions of ineligibility and eligibility. The Attorney General agrees the amended statute applies retroactively, but maintains a remand is unnecessary because the court clearly indicated it would not have granted the motion even under the reversed presumptions.

As we explain, we conclude the amendment to section 654.3 applies retroactively to this case, and that a remand is warranted to afford the juvenile court the opportunity to consider the Minor's motion under the new

---

[1]    Further undesignated statutory references are to the Welfare and Institutions Code.

2

presumption of eligibility.  We express no view on how the court should resolve the issue on remand.

Accordingly, we conditionally reverse the dispositional order, as further explained in our Disposition, *post*.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Petition

In December 2019, the district attorney filed a wardship petition under section 602 charging the Minor, then 14 years old, with one felony count of committing a lewd act on a child under 14—his nine-year-old cousin, Alexa. (Pen. Code, § 288, subd. (a).)  The Minor denied the allegations and the juvenile court set the matter for a hearing on a motion for informal supervision.

### B.  Motion for Informal Supervision

The Minor moved the juvenile court to continue the adjudication hearing on the petition, place him under informal supervision, and, if he successfully completed the supervision program, to dismiss the petition. (§§ 654, 654.2.)  The prosecution opposed the motion.  After a hearing, the juvenile court denied the motion.  We discuss the motion proceedings in greater detail in Discussion part II.A., *post*.

### C.  Adjudication Hearing

In June 2021, the juvenile court held a two-day adjudication hearing. Witness testimony established the following:

In late 2018, the Minor moved from his mother's home in Honduras to Carlsbad to live with his father, "stepmom" (although she was not legally married to the father), half-sister, and stepbrother.  The stepmother's sister lived nearby with two children of her own (Alexa and her brother).

In March 2019, the Minor took a trip to the desert with his grandparents, siblings, and cousins. On the drive home, the Minor was in the backseat of the grandparents' truck with Alexa and two of the other children. At some point, Alexa became cold and switched seats with one of the other children so she could sit next to the Minor, who had a blanket. After falling asleep, Alexa awoke to find the Minor's hand in her pants touching her vagina over her underwear. Later, Alexa "kind of woke up and then he was doing it again." Alexa took the blanket off her lap, crossed her arms over her lap, and stayed awake the rest of the way home.

Once home, Alexa told her mother about the touching.[2] Alexa's mother called her sister (the Minor's stepmother), who brought the Minor to Alexa's apartment. When confronted, the Minor denied touching Alexa. The stepmother apologized for what happened and said her husband (the Minor's father) should be involved in any further discussions about the situation. The Minor left with his stepmother and returned the next morning with his father. That morning, the Minor initially continued to deny any wrongdoing, but eventually admitted he "did something." Alexa's mother called the police.

The police responded and asked the Minor some preliminary questions to determine "[i]f he understood right from wrong." He said he did. When asked for an example of something right, he said "not to do what I did." The officers referred the matter for further investigation.

About six months later, Alexa underwent a forensic interview during which she disclosed that the Minor had touched her vaginal area three times during the incident.

---

[2] Alexa told her mother the Minor touched her three times, digitally penetrating her vagina on the third. Alexa testified at the hearing he touched her twice, and only on the outside of her vagina.

After the incident, Alexa began having suicidal thoughts and panic attacks. She saw mental health professionals and was diagnosed with post-traumatic stress disorder.

At the end of the adjudication hearing, the juvenile court sustained the petition.

### D. Disposition

At the disposition hearing, the juvenile court declared the Minor a ward of the court; ordered that "care custody and control of the Minor is to be under the supervision of the probation officer"; and placed him with his father.

## II. DISCUSSION

When the Minor moved for informal supervision, he was presumptively ineligible under former section 654.3, subdivision (h) because he was at least 14 years old and had been charged with a felony. The Legislature subsequently amended section 654.3 to eliminate this category from the list of categories of minors presumptively ineligible for informal supervision. (Stats. 2021, ch. 603, § 1; § 654.3, subds. (a)-(b).) The Minor contends this amendment applies retroactively to his case and requires a remand for reconsideration under the new standard. We agree.

### A. Motion for Informal Supervision

In June 2020, the Minor moved the juvenile court under section 654.2 to continue the adjudication hearing on the petition, place him under informal supervision, and, if he were to successfully complete the supervision program, to dismiss the petition.

The Minor acknowledged he was presumptively ineligible for informal supervision, but argued it was nevertheless appropriate because this is an unusual case in which it would serve the interests of justice. The Minor

5

stated he was apologetic, had enrolled in counseling focused on sexual boundaries and decision making, and understood that his behavior was inappropriate. Several teachers provided character references indicating the Minor had "earned a reputation as a kind, polite classmate and a dedicated, high-achieving student." The Minor's father and stepmother were "very active in helping" him and were "working to help [him] understand how to make good decisions in personal relationships that demonstrate his genuine respect for others." The Minor had not had any other issues with law enforcement, was not violent or dangerous, did not use drugs or alcohol, and was not involved with gangs.

The prosecution opposed the motion, arguing this is not an unusual case where the interests of justice would be served by granting informal supervision. Weighing against involuntary supervision, the prosecution argued the Minor's alleged conduct was "extremely disturbing and of concern" because he took advantage of his vulnerable nine-year-old cousin; although the Minor had apologized generally, he had not "demonstrate[d] any empathy or take[n] accountability for his specific conduct"; the police had referred the matter for prosecution; the initial six-month statutory window for informal supervision "is not enough to rehabilitate and treat" the Minor because "[m]ost sex offender specific programs last 12-18 months"; and the incident has had "a negative impact" on Alexa.

The prosecution acknowledged certain factors weighed in favor of granting informal supervision, including that the Minor had apologized (albeit only generally); "he has done well academically and appears to have good citizenship"; he "does not have any prior delinquent record"; and his "parents have been cooperative," "appear to be supportive," and enrolled him in the "Alternatives to Detention" program.

6

The prosecution noted the probation department had not yet conducted a social study of the Minor, nor had a psychologist yet evaluated him to determine "if he is a high risk for sexually re-offending or not."

By the time of the hearing, however, a psychologist had evaluated the Minor and assessed his "risk for sexual acting out/sexually assaultive behaviors [as] very low with almost no risk factors identified as being present . . . ." The psychologist characterized the incident as an "aberration."

Also before the hearing, a case manager at North County Lifeline prepared a report stating the Minor had enrolled in and successfully completed the Alternatives to Detention program. The report indicated the Minor attended and was actively engaged in 15 consecutive individual counseling sessions that focused on sexual boundaries and decision making.

The court heard the Minor's motion on August 24, 2020. The court stated it had reviewed the motion, the case manager's report, and the psychologist's evaluation. The court's tentative ruling was to deny the motion.

The Minor's counsel argued against the tentative, characterizing the charged offense as arising from "a one-time incident" committed when the Minor was only 14 and just after he had moved to the U.S. from Honduras. Counsel cited the favorable circumstances referenced in the case manager's report, psychologist's evaluation, and character references from the Minor's teachers. Counsel also noted the Minor's positive performance without probation supervision in the nearly one and one-half years that had elapsed since the incident.

The prosecutor acknowledged "this was a one-time incident" committed by a 14-year-old, but countered that it was "an extremely serious and dangerous incident" involving a "much younger" nine-year-old victim who

7

was "the most vulnerable, not just by her age but because she was asleep" at the time of the offense. The prosecutor urged the court to deny the motion and put the Minor on formal probation.

Alexa's mother addressed the court to oppose the Minor's request, arguing "he needs to take full responsibility for what he did" because Alexa "has experienced a lot of trauma from this incident." The mother explained Alexa had gone to counseling, had thoughts of self-harm, and "gets up at night crying, screaming from nightmares."

The juvenile court denied the Minor's motion with the following explanation:

> "When considering all the factors, I understand and I appreciate the fact that [the Minor] has a lot of support and that his grades are good, but the conduct is very serious and the victim was only nine years old at the time, and the court believes that the family of [the Minor] . . . and [the Minor] himself would benefit from involvement of the probation officer and that further evaluation is necessary.
>
> "The court has also considered the attitude of the victim and her mother, which was also expressed in the papers. And so I've taken that into account. I don't believe informal supervision would be appropriate in this case for the welfare of the minor as well as the protection of the public. So I'm going to deny the informal supervision motion."

## B. Legal Principles

### 1. Informal Supervision

Section 654 authorizes an informal supervision program for minors facing potential juvenile delinquency charges. (See *Derick B. v. Superior Court* (2009) 180 Cal.App.4th 295, 300-301 (*Derick B.*); *In re C.Z.* (2013) 221 Cal.App.4th 1497, 1502 (*C.Z.*).) " 'The purpose of the informal supervision program is to provide assistance and services to the minor and the minor's family to "adjust the situation" and avoid further involvement in the formal

8

juvenile criminal justice system.' " (*Derick B.*, at p. 301.) "The underlying purpose of section 654 informal supervision is to avoid a true finding on criminal culpability, which would result in a criminal record for the minor." (*Ibid.*)

Before a juvenile delinquency petition is filed, a probation officer may refer a minor for informal supervision services instead of pursuing a petition proceeding. (§ 654, subd. (a).) After a juvenile delinquency petition has been filed—as is the case here—the juvenile court has the discretion to continue any hearing on the petition and instead order a program of informal supervision. (§ 654.2, subd. (a); see *Derick B.*, *supra*, 180 Cal.App.4th at p. 301 ["section 654.2 provides the court with discretion to order informal supervision postpetition but before adjudication of the charges alleged in the petition, rather than continuing with the petition proceedings"]; *C.Z.*, *supra*, 221 Cal.App.4th at p. 1502.) "If the minor successfully completes the program of supervision, the court shall order the petition be dismissed." (§ 654.2, subd. (a); see *Derick B.*, at p. 301.) If the minor does not successfully complete the program, proceedings on the petition continue. (§ 654.2, subd. (a); *Derick B.*, at pp. 301-302.)

Section 654.3 identifies categories of minors who are presumptively ineligible for informal supervision. (See *Kody P. v. Superior Court* (2006) 137 Cal.App.4th 1030, 1033, fn. 2.) When the petition against the Minor was filed, section 654.3 provided in pertinent part:

> "No minor shall be eligible for the program of supervision set forth in Section 654 or 654.2 in the following cases, except in an unusual case where the interests of justice would best be served and the court specifies on the record the reasons for its decision: [¶] . . . [¶]

9

"(h) The minor is alleged to have committed a felony offense when the minor was at least 14 years of age." (Former § 654.3.)[3]

Effective January 1, 2022, the Legislature enacted Senate Bill No. 383, which, as relevant here, amended section 654.3 to delete subdivision (h)'s presumptive ineligibility for minors charged with committing felonies when they were at least 14 years old. (Stats. 2021, ch. 603, § 1.) The amendment also eliminated the phrase "in an unusual case" from the statute's introductory paragraph. (*Ibid.*; compare former § 654.3 with § 654.3, subd. (a).)[4] Thus, whereas a minor charged with committing a felony when the minor was at least 14 years old was *presumptively ineligible* for informal

---

[3] Under former section 654.3, a minor was also presumptively ineligible for informal supervision if the minor fell into any of the following categories: "(a) A petition alleges that the minor has violated an offense listed in subdivision (b) of Section 707. [¶] (b) A petition alleges that the minor has sold or possessed for sale a controlled substance . . . [¶] (c) A petition alleges that the minor has violated Section 11350 or 11377 of the Health and Safety Code where the violation takes place at a public or private elementary, vocational, junior high school, or high school, or a violation of Section 245.5, 626.9, or 626.10 of the Penal Code. [¶] (d) A petition alleges that the minor has violated Section 186.22 of the Penal Code. [¶] (e) The minor has previously participated in a program of supervision pursuant to Section 654. [¶] (f) The minor has previously been adjudged a ward of the court pursuant to Section 602. [¶] (g) A petition alleges that the minor has violated an offense in which the restitution owed to the victim exceeds one thousand dollars ($1,000) . . . ."
The Attorney General does not contend the Minor was presumptively ineligible under any of these categories.

[4] Although not relevant here, the amendment also deleted certain drug-related offenses (specified in former § 654.3, subds. (b)-(c)) from those rendering a minor presumptively ineligible for informal supervision, and renumbered the subdivisions containing the categories of presumptively ineligible minors. (See Stats. 2021, ch. 603, § 1; compare former § 654.3, subds. (a)-(h) with § 654.3, subds. (a)-(b).)

10

supervision under former section 654.3, subdivision (h), such a minor is now *presumptively eligible* under the current version of section 654.3.  (See § 654, subd. (a) [providing in part, "when in the judgment of the probation officer the interest of the minor and the community can be protected, the probation officer shall make a *diligent effort* to proceed" with informal supervision, italics added].)

## 2.  Retroactivity Principles

Criminal statutes are generally presumed to apply prospectively, unless they indicate otherwise.  (Pen. Code, § 3; *In re Estrada* (1965) 63 Cal.2d 740, 745 (*Estrada*); *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307 (*Lara*).)  In *Estrada*, however, the Supreme Court "held that an amendatory statute lessening punishment for a crime was presumptively retroactive and applied to all persons whose judgments were not yet final at the time the statute took effect."  (*People v. Frahs* (2020) 9 Cal.5th 618, 624 (*Frahs*).)  " 'The *Estrada* rule rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' "  (*Lara*, at p. 308; see *Estrada*, at p. 745.)

Although the *Estrada* rule arose in the context of ameliorating the punishment for a particular crime (*Estrada*, *supra*, 63 Cal.2d at pp. 743-744 [escape without force or violence]), the Supreme Court has since applied the rule more broadly to legislation that "provide[d] a possible ameliorating benefit for a class of persons" (*Frahs*, *supra*, 9 Cal.5th at p. 624 [pretrial mental health diversion under Pen. Code, § 1001.36]).

In cases in which the courts have held that new legislation applies retroactively to a pretrial procedure, the Supreme Court has endorsed a

11

conditional limited remand procedure in which the judgment or dispositional order is conditionally vacated while the lower court applies the retroactive legislation. (See *Frahs, supra,* 9 Cal.5th at p. 640 [pretrial mental health diversion]; *Lara, supra,* 4 Cal.5th at pp. 309-310 [juvenile transfer hearings under Proposition 57].) If the lower court reaches a different conclusion under the retroactively applicable legislation than it reached before, the court proceeds accordingly under the retroactive legislation. (*Frahs,* at p. 641.) If the court reaches the same conclusion as before, the court reinstates the judgment or dispositional order. (*Ibid.*)

That said, the courts have found it unnecessary to remand when doing so would be futile in light of the lower court's clear indication it would have reached the same conclusion even under a newly applicable standard. (See, e.g., *People v. McDaniels* (2018) 22 Cal.App.5th 420, 425 [remand not required if "the record shows that the trial court clearly indicated when it originally sentenced the defendant that it would not in any event have stricken [the] . . . enhancement"]; *People v. McVey* (2018) 24 Cal.App.5th 405, 419 [finding remand to exercise discretion to strike enhancement futile "[i]n light of the trial court's express consideration of the factors in aggravation and mitigation, its pointed comments on the record, and its deliberate choice of the highest possible term for the firearm enhancement"]; cf. *Frahs, supra,* 9 Cal.5th at p. 638 [finding conditional limited remand warranted where the trial court's findings "do not conclusively establish that remand would be futile"].)

### C. Analysis

Considering these well-established retroactivity principles, we agree with the parties and with this court's recent decision that the legislative amendment deleting subdivision (h) from former section 654.3 applies

retroactively to the Minor.. (See *In re N.L.* (2022) __ Cal.App.5th __; 2022 WL 2866214, at *4-6 [concluding Senate Bill No. 383 applies retroactively to a minor who committed a felony offense (arson) when she was 16 years old, and conditionally reversing the order of the juvenile court adjudging the minor to be a ward of the court to allow it to consider informal supervision under section 654.2].) By deleting the subdivision, the Legislature granted presumptive eligibility for informal supervision to a class of persons who previously were presumptively ineligible: minors who were charged with committing felonies when they were at least 14 years old. This undoubtedly improved these minors' prospects of receiving informal supervision, which, in turn, undoubtedly improved their prospects of eventually having the charges against them dismissed. This type of ameliorative benefit applies retroactively under *Estrada*. (See *Frahs*, *supra*, 9 Cal.5th at p. 624 [finding mental health diversion under Penal Code "section 1001.36 by design and function provides a possible ameliorating benefit for a class of persons—namely, certain defendants with mental disorders—by offering an opportunity for diversion and ultimately the dismissal of charges"].)

Nevertheless, the Attorney General maintains a remand is unnecessary because the juvenile court's comments when denying the Minor's motion for informal supervision clearly indicate the court would have denied the motion even if the Minor were presumptively eligible. The Attorney General cites the fact the juvenile court stated it did "not believe informal supervision would be appropriate in this case" in light of the Minor's "very serious" conduct; the victim's youth, vulnerability, and plea for justice; and the court's view that the Minor and his family "would benefit from involvement of the probation officer and that further evaluation is necessary." However, the court made these observations within the framework of the Minor being

13

presumptively ineligible for informal supervision and, thus, bearing the burden of demonstrating this is an unusual case in which the interests of justice would be served by ordering informal supervision.

With that presumption reversed, we are not persuaded the juvenile court would necessarily have reached the same conclusion. For example, as the prosecution recognized in its opposition to the motion, the Minor apologized for his conduct, has done well in school, does not have any prior delinquent record, and has cooperative and supportive parents. The psychologist who evaluated the Minor assessed him as being at low risk for recidivating and characterized the incident as an "aberration." And a case manager reported that the Minor had attended and actively engaged in 15 counseling sessions focused on sexual boundaries and decision making.

Because we are not persuaded the juvenile court would necessarily have denied the motion if operating from the presumption that the Minor was eligible for informal supervision, we will issue a conditional limited remand with directions that the juvenile court reconsider the motion within that framework. We express no view on how the juvenile court should exercise its discretion in doing so.

## III. DISPOSITION

We conditionally reverse the dispositional order, with directions that the juvenile court reconsider the Minor's motion for informal supervision in light of amended section 654.3. If the juvenile court finds that informal supervision is appropriate, the court shall grant the motion and order informal supervision. If the Minor successfully completes the informal supervision, the court shall dismiss the petition. However, if the court determines that informal supervision is not appropriate, or if the court orders a program of informal supervision but the Minor fails to successfully

14

complete it, then the court shall reinstate the dispositional order.  We express no view on whether informal supervision is appropriate in this case.


HALLER, Acting P. J.

WE CONCUR:


O'ROURKE, J.


AARON, J.